UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| VICTORIA L. THOMAS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:05-CV-253 RM |
| | ) | |
| SOUTH BEND COMMUNITY | ) | |
| SCHOOL CORPORATION BOARD | ) | |
| OF SCHOOL TRUSTEES, et al., | ) | |
| | ) | |
| Defendants | ) | |

OPINION and ORDER

Victoria Thomas seeks injunctive, declaratory, and equitable relief and monetary damages against the South Bend Community School Corporation Board of School Trustees, Joan Raymond, the Corporation's former superintendent, and Amber Harmon and Martin Lopez, employees of the Corporation during the 2003-2004 school year (collectively "school defendants"), and the National Education Association–South Bend[1] for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*; 42 U.S.C. §§ 1981, 1981a, 1983, and 1988; and Indiana tort law. The school defendants have moved for summary judgment on Ms. Thomas's claims against them. Ms. Thomas filed her response brief, together with

---

[1] Ms. Thomas's claims against the National Education Association–South Bend were stayed pending the outcome of an administrative review by the Indiana Education Employment Relations Board pursuant to Indiana Code § 20-29-7-4. *See* July 11, 2007 Opinion and Order [docket # 82].

a motion for oral argument and motions to strike portions of the school defendants' Statement of Undisputed Material Facts, portions of Dr. Karyle Green's affidavit, and portions of the affidavit of Jeff Heck. Following a review of the parties' submissions, the court determines that oral argument isn't necessary and denies Ms. Thomas's request in that regard, and for the reasons that follow, DENIES the motions to strike and GRANTS the school defendants' summary judgment motion.

## I. FACTS

Victoria Thomas's career with the South Bend Community School Corporation began in 1976 when, from 1976 to 1979, she served as a social worker under a Criminal Justice grant. Ms. Thomas became employed as a social worker for the School Corporation at the beginning of the 1979-1980 school year. Ms. Thomas became a special education teacher for the corporation in 1981 and worked in that capacity until February 1993 when she was appointed Acting Assistant Principal at Adams High School for the remainder of the 1992-1993 school year. Ms. Thomas became Assistant Principal at Clay Middle School the following year and served in that capacity until October 2003.

The school corporation reports that during the 2003-2004 school year, Ms. Thomas was employed as Assistant Principal at Clay Middle School under a regular teacher's contract and a separate administrator's contract. Ms. Thomas's duties at Clay included operating the school's attendance office, designing

programs to reduce absenteeism throughout the School Corporation, preparing teacher evaluations, overseeing teacher discipline, helping to formulate Clay's improvement plan, and performing the duties of principal when the school's principal was out of the building.

On October 23, 2003, Dr. Karyle Green, Assistant Superintendent of Human Resources for the School Corporation, received a handwritten report from Amber Harmon, an aide to S.A., a disabled, non-verbal, autistic student at Clay Middle School, and a second report from Martin Lopez, who was then serving as a substitute teacher at Clay Middle School. Ms. Harmon and Mr. Lopez reported witnessing an incident involving S.A. and Victoria Thomas, Clay's Assistant Principal, on October 22. *See* Green Aff., Exhs. D, E. Dr. Green also received a written statement from Ms. Thomas about the incident, where Ms. Thomas wrote that "what was on the paper was true, but that it had been taken way out of context. I have a special rapport with [S.A.] and she considers me her friend." Green Aff., Exh. F. Dr. Green says Dianne Greaves and Carolyn Higgins, other School Corporation officials, met with Ms. Thomas on October 23 about the incident, and they reported that at that meeting Ms. Thomas admitted the conduct, but stated she had acted in a playful, not mean, way and the incident had been taken out of context. *See* Green Aff., Exh. G. School officials then advised Ms. Thomas that she was suspended with pay and that the School Board was being asked to consider terminating her administrator's and teacher's contracts. *See* Green Aff., Exhs. H, I. Ms. Thomas insists the reason given for the

3

disciplinary action was untrue – she never hit S.A. with a belt, but used a playful approach to get S.A. to follow her aide's directions and return to her classroom.

Ms. Thomas's administrative hearing before the School Board was scheduled for December 1, 2003. Ms. Thomas retained attorney John Hamilton to represent her in the matter, and due to conflicts with Mr. Hamilton's schedule, the hearing was continued to December 15 and then to January 20. At Ms. Thomas's request, a pre-hearing conference with Superintendent Joan Raymond was held on January 5. Ms. Thomas attended the conference accompanied by her counsel; Dr. Green and School Corporation attorney Jeff Heck also attended. Hearing officer Richard Nussbaum was scheduled to conduct a due process hearing on January 7.

On January 6, Jeff Heck, representing the School Corporation, and John Hamilton, representing Ms. Thomas, began settlement discussions and orally agreed to various terms that would settle the matter and abrogate the need for the due process hearing and the School Board's termination hearing. Pursuant to the terms of the agreement, a position was created for Ms. Thomas at Jackson Intermediate Center, and Ms. Thomas reported to Jackson Intermediate on January 12, 2004 to work as a special education teacher. She remained in that position through the end of the 2003-2004 school year.

Ms. Thomas says she never authorized Mr. Hamilton to enter into a settlement on her behalf and, in fact, didn't know that Mr. Hamilton and Mr. Heck had reached an agreement relating to her continued employment with the School

4

Corporation. She says a written agreement was tendered to her, but because she couldn't agree to the terms, she refused to sign it. Ms. Thomas says that after her reassignment to Jackson Intermediate Center, she applied for three different positions within the School Corporation, but was rejected each time. According to Ms. Thomas, the School Corporation refused to hire her for those positions in retaliation for her not signing the settlement agreement. She also claims the disciplinary action imposed upon her as a result of the S.A. incident was discriminatory.

Ms. Thomas filed suit against the School Corporation in June 2005, alleging race, sex, and age discrimination, retaliation based on race, sex, and age, due process violations, wrongful discharge in violation of 42 U.S.C. § 1981, and unlawful practices in violation of 42 U.S.C. § 1983; against Amber Harmon, Martin Lopez, and Joan Raymond for defamation; and against the National Education Association–South Bend for breach of the duty of fair representation. Ms. Thomas seeks compensatory and special damages, declaratory, injunctive, and equitable relief, front pay, reinstatement to the position of Assistant Principal at Clay Middle School, costs and fees.

The school defendants have moved for summary judgment on Ms. Thomas's complaint, arguing that the settlement agreement bars her claims and, alternatively, even if her claims aren't barred, she can't establish a prima facie case of discrimination, retaliation, wrongful discharge, unlawful employment practices, or defamation.

II. Motions to Strike

Ms. Thomas has moved to strike certain evidence the school defendants submitted in support of their summary judgment motion, specifically portions of the affidavit of Jeff R. Heck, Esq., portions of the affidavit of Dr. Karyle Green, and a portion of the school defendants' Statement of Undisputed Material Facts. Ms. Thomas argues that the school defendants can't rely on the challenged evidence because the affidavits aren't based on personal knowledge and constitute inadmissible hearsay.

Summary judgment affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e). Personal knowledge "includes inferences – all knowledge is inferential – and therefore opinions. But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." Visser v. Packer Engineering Assoc., Inc., 924 F.2d 655, 659 (7th Cir. 1991). Affidavits, or portions thereof, that don't comply with Rule 56(e) may be stricken.

*A. The Heck Affidavit*

Ms. Thomas first seeks to have "all references to Attorney Heck's 'Matter/TimeKeeper-Time Card List" stricken as inadmissible hearsay. The school

6

defendants respond that Mr. Heck's billing records are admissible as business records under Federal Rule of Evidence 803(6). Mr. Heck's testimony is that during the course of his representation of the School Corporation he maintained billing records reflecting actions taken on behalf of the School Corporation in this matter, and he says his affidavit exhibit contains "a true, accurate, authentic, and complete copy" of his billing records and the billing records are "a true and accurate record of the events that took place on the dates and times recorded." Ms. Thomas hasn't challenged Mr. Heck's statements in this regard. She summarily concludes that the billing records don't qualify as business records because they are the School Corporation's own statements and are "inadmissible self-serving hearsay." Rule 803(6) doesn't prohibit a party from relying on its own business records. Ms. Thomas's request to strike Mr. Heck's billing records must be denied.

Ms. Thomas next argues that portions of paragraphs 4 and 17[2] of Mr. Heck's affidavit should be stricken because the statements aren't based on Mr. Heck's personal knowledge and are inadmissible hearsay. The school defendants respond that the challenged portions of Mr. Heck's affidavit aren't hearsay because Mr. Heck's testimony "is not offered to prove the truth of the matter

---

[2] The court assumes Ms. Thomas is asking that a portion of paragraph 17 of Mr. Heck's affidavit be stricken, even though the second page of her motion to strike Mr. Heck's affidavit [docket # 115] quotes some unidentified text. *See* <u>Corley v. Rosewood Care Ctr., Inc. of Peoria</u>, 388 F.3d 990, 1001 (7th Cir. 2004) (court should not be required to "root through" documents to make arguments for a party).

asserted, *i.e.*, that the [due process] hearing was continued, but to provide the School's motivation for agreeing to the continuance." In reply, Ms. Thomas doesn't challenge the school defendants' argument, but, rather, complains that the school defendants "cite no authority" for the proposition that Mr. Heck's testimony is admissible under any exception to the hearsay rule. Ms. Thomas's reply brief also argues for the first time that paragraphs 4, 6, 10, 11, 12, 13, 14, 16, and 17 should be stricken because Mr. Heck "may be untrustworthy and motivated to lie about events and interpret documents in a manner that would be unfair and prejudicial" to her and "because of the restrictions of the attorney-client privilege, there is virtually no corroborative evidence" for his testimony. Reply, at 2. Ms. Thomas's request to strike paragraphs other than 4 and17 is denied as improperly raised in a reply brief, *see* United States v. Williams, 436 F.3d 767, 769 (7th Cir. 2006) ("the defendant has waived this argument because he presented it for the first time in his reply brief"), and her motion to strike portions of paragraphs 4 and 17 is denied, as well – none of her unsupported statements about Mr. Heck's motives in this case transform any of his affidavit statements into hearsay.

### B. The Green Affidavit

Ms. Thomas asks the court to strike portions of paragraphs 4, 5, 6, 7, 9, and 10 and all of paragraph 11 of Dr. Green's affidavit because the cited testimony isn't based on Dr. Green's personal knowledge and is inadmissible hearsay. The school defendants respond that Dr. Green's affidavit statements are based on her

personal knowledge: as the School Corporation's Assistant Superintendent of Human Resources, Dr. Green was involved in this investigation, is familiar with the corporation's discipline process for teachers and administrators, and has personal knowledge about the specifics of the process by which the corporation employs teachers and administrators, including Ms. Thomas. The school defendants next say Dr. Green's affidavit statements relating to her receipt of allegations of Ms. Thomas's misconduct don't constitute hearsay because the statements aren't being offered to prove the truth of the matters asserted, *i.e.*, whether Ms. Thomas hit a disabled student with a belt, but to show why the School Corporation took disciplinary action against Ms. Thomas. The school defendants lastly argue that the written statement of Ms. Thomas referenced in paragraph 7 isn't hearsay because, pursuant to Federal Rule of Evidence 801(d)(2), the statement is one of a party opponent.

Ms. Thomas hasn't provided any argument or evidence to support a finding that Dr. Green lacks the requisite personal knowledge to support her affidavit statements. And while Ms. Thomas insists that Dr. Green's statements can't be used to establish the truth as to "whether S.A. was a disabled student that was hit with a belt," the school defendants have conceded as much: they say Dr. Green's statements aren't being offered to prove the truth of what happened, but are offered to show why the School Corporation investigated and took disciplinary action against Ms. Thomas and so aren't hearsay. Ms. Thomas is correct that the Local Rules of the United States District Court for the Northern District of Indiana

9

don't require a motion to strike to be accompanied by a separate supporting brief, but a movant still must provide legal support for such a request. Ms. Thomas hasn't done so. Her unsupported conclusion that Dr. Green's testimony "is not based on her personal knowledge . . . and constitutes inadmissible hearsay," Mot., at 2, is insufficient to persuade the court that Dr. Green's affidavit statements should be stricken. Ms. Thomas raises new arguments and legal theories in her reply brief, but those arguments and theories aren't found in her motion and, therefore, are waived. *See* United States v. Alhalabi, 443 F.3d 605, 611 (7th Cir. 2006) ("Alhalabi did not develop this argument in his initial brief before this court, raising it in a meaningful way only in his reply brief, so it is waived."); United States v. Feinberg, 89 F.3d 333, 341 (7th Cir. 1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."); Fairly v. Andrews, 430 F. Supp. 2d 786, 800 n.6 (N.D. Ill. 2006) ("arguments raised for the first time in a [party's] reply brief are waived because the nonmovant has had no opportunity to respond"). Ms. Thomas's motion to strike Dr. Green's affidavit is denied.

*C. Certain Evidence*

Most of the evidence sought to be stricken in Ms. Thomas's "Motion to Strike Certain Evidence" relates to affidavit statements of Mr. Heck and Dr. Green; those same requests to strike were contained in, and already addressed in ruling on, the motions to strike the Heck and Green affidavits. The only remaining topic, found

10

in paragraph 3 of the motion, is "Party's own statements." Ms. Thomas provides no argument or legal support for striking any party's statement, so the request is denied. *See* <u>Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ind.</u>, 424 F.3d 659, 664 n.2 (7th Cir. 2005) ("It is the parties' duty to package, present, and support their arguments."); <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 324 (7th Cir. 1996) ("Given our adversary system of litigation, it is not the role of the court to research and construct the legal arguments open to the parties."). Because this motion's other requests to strike were denied in connection with the motions to strike the Heck and Green affidavits, the Motion to Strike Certain Evidence is denied in its entirety.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); *see also* <u>Metzger v. Illinois State Police</u>, No. 06-3251, 2008 WL 706602, at *3 (7th Cir. Mar. 18, 2008) (court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party"). "No genuine issue of material fact exists when

a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party." Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in her favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

## IV. DISCUSSION

### A. The Settlement Agreement

The school defendants maintain that the January 2004 settlement agreement between Ms. Thomas and the School Corporation bars Ms. Thomas's claims in this action. The school defendants assert that Ms. Thomas designated Mr. Hamilton to be her legal representative in the School Corporation's proceedings against her, so the settlement agreement negotiated by Mr. Hamilton on Ms. Thomas's behalf constitutes an binding agreement. The school defendants

12

recognize that Ms. Thomas didn't sign the agreement, but insist that she ratified the agreement and, therefore, is bound by its terms, entitling them to summary judgment on her claims against them.

According to the school defendants, the School Corporation, through its attorney Jeff Heck, and Ms. Thomas, through her attorney John Hamilton, orally agreed that the School Corporation would let Ms. Thomas transfer to a probationary teaching position at Jackson Intermediate Center for the rest of the 2003-2004 school year, her administrator's contract would be cancelled effective December 15, 2003, and she would lose two weeks' pay, in exchange for Ms. Thomas's agreement to release the School Corporation from any liability based on its actions in seeking to terminate her contracts. Heck Aff., ¶ 12. The school defendants explain that Mr. Heck incorporated those terms into a written document, which he forwarded to Mr. Hamilton for Ms. Thomas's signature. Heck Aff., Exh. M; Hamilton Dep., at 22-24. Mr. Hamilton conveyed Ms. Thomas's request that the School Corporation also agree to remove all documents relating to the incident from her personnel file; Mr. Heck responded that the School Corporation wouldn't agree to remove those documents from her personnel file, but would agree to seal all documents relating to the incident and place them in Ms. Thomas's personnel file to be opened only if similar allegations arose in the future. Heck Aff., Exh. O. Mr. Heck added that term to the written settlement document and sent the revised settlement agreement to Mr. Hamilton for Ms. Thomas's signature. Heck Aff., Exh. O.

The school defendants say Ms. Thomas didn't notify them of any further objections to the agreement or propose any modifications to the agreement. Even though Ms. Thomas never signed the written agreement, the school defendants assert that she ratified the settlement's agreed-upon terms by accepting the special education position created for her at Jackson Intermediate Center and working in that position for the remainder of the 2003-2004 school year. The school defendants maintain Ms. Thomas is bound by her agreement to not bring any claims based on this series of events and, therefore, they are entitled to summary judgment on her claims against them.

State contract law governs settlement agreements. <u>Sims-Madison v. Inland Paperboard and Packaging, Inc.</u>, 379 F.3d 445, 448 (7th Cir. 2004). The parties agree that Indiana law governs, and in Indiana settlement agreements "are governed by the same general principles of contract law as any other agreement." <u>Zimmerman v. McColley</u>, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005). "Indiana strongly favors settlement agreements, [a]nd it is established law that if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." <u>Georgos v. Jackson</u>, 790 N.E.2d 448, 453 (Ind. 2003).

Oral settlement agreements are enforceable contracts under Indiana law. *See* <u>Vernon v. Acton</u>, 732 N.E.2d 805, 809 (Ind. 2000) ("[I]n general, settlement agreements need not be in writing to be enforceable."). Thus, because "the validity of a contract is not dependent upon the signature of the parties [and] other forms

14

of assent [may] establish that they reached a binding settlement agreement,"
Natare Corp. v. Aquatic Renovation Sys., Inc., 987 F. Supp. 695, 699 (S.D. Ind.
1997), the court must determine whether the parties entered into a valid and
enforceable agreement. *See* Fox Dev., Inc. v. England, 837 N.E.2d 161, 165 (Ind.
Ct. App. 2005) (whether a set of facts establishes a contract is a question of law).

### 1. Actual or Apparent Authority

Ms. Thomas maintains she didn't authorize Mr. Hamilton to enter into a
settlement on her behalf. "Under general principles of Indiana agency and contract
law, a principal will be bound by a contract entered into by the principal's agent
on [her] behalf only if the agent had actual or apparent authority to bind [her], or
if the principal subsequently ratifies the agreement." Carr v. Runyan, 89 F.3d 327,
331 (7th Cir. 1996); *see also* Koval v. Simon Telelect, Inc., 693 N.E.2d 1299, 1301
(Ind. 1998) (to bind a client to a settlement, an attorney must have either express,
implied, or apparent authority, or must act according to the attorney's inherent
agency power). The attorney-client privilege precludes Mr. Hamilton from testifying
about the scope of his representation of Ms. Thomas, so the court will assume
that Mr. Hamilton didn't have actual authority to enter into any agreements
relating to the termination of Ms. Thomas's administrator's and teacher's
contracts.

The question then becomes whether Mr. Hamilton had apparent authority,
as the school defendants claim, to enter into a binding settlement on Ms.

Thomas's behalf. "Apparent authority refers to a third party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent." Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000) (citations omitted); *see also* Koval v. Simon Telelect, 693 N.E.2d at 1303 n.6 ("both apparent and inherent agency power may be created by actions of the client in its dealings with third parties even if the attorney knows there is no actual authority"). "[P]lacing an agent in a position to act and make representations which appear reasonable is sufficient to endow [the agent] with apparent authority." AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc., 816 N.E.2d 40, 48 (Ind. Ct. App. 2004).

Actions relevant to a determination of Mr. Hamilton's apparent authority include the following. Soon after Ms. Thomas learned that the School Board would be considering the termination of her administrator's and teacher's contracts, she hired Mr. Hamilton to represent her in the matter. Heck Aff., Exh. B. But Ms. Thomas's retention of Mr. Hamilton to represent her did not, by itself, confer implied or apparent authority on Mr. Hamilton to enter into a settlement. Pohl v. United Airlines, Inc., 213 F.3d 336, 338 (7th Cir. 2000) (*citing* Koval v. Simon Telelect, 693 N.E.2d at 1301). "The authority to settle, therefore, derives from other actions of the client with respect to the attorney or third parties." Pohl v. United Airlines, 213 F.3d at 338.

Mr. Hamilton's representation of Ms. Thomas included his:

16

– writing to counsel for the School Corporation to advise of Ms. Thomas's legal position with respect to the charges against her and to request an administrative hearing in connection with the proposed termination of her contracts [Heck Aff., Exh. B];

– corresponding with Mr. Heck about the scheduling and rescheduling of Ms. Thomas's hearing before the School Board [Heck Aff., Exhs. C-F];

– negotiating with Mr. Heck about Ms. Thomas's employment status pending her termination hearing [Heck Aff., Exhs. D, E, F];

– requesting and receiving assurances from School Corporation counsel that the rescheduling of Ms. Thomas's termination hearing wouldn't result in a waiver of any potential claims she might have under Title VII or Section 1981 [Heck Aff., Exh. E];

– accompanying Ms. Thomas to her January 5, 2004 pre-hearing conference with Superintendent Raymond [Heck Aff., ¶ 11; Green Aff., ¶ 10; Thomas Dep., at 82];

– entering into discussions with Mr. Heck and Richard Nussbaum, the hearing officer, about the particulars of Ms. Thomas's termination hearing [Hamilton Dep., at 25-26; Heck Aff., Exhs. H, K];

– contacting Mr. Heck, after Ms. Thomas's conference with the superintendent, to discuss Ms. Thomas's settlement options and, based on those discussions, agreeing to specific settlement terms that would allow Ms. Thomas to return to a teaching position in lieu of proceeding with a termination hearing [Hamilton Dep., at 46, 48; Heck Aff., ¶ 12];

– receiving a copy of a written agreement, drafted by Mr. Heck and incorporating the terms of the oral settlement, for Ms. Thomas's consideration and signature [Hamilton Dep., at 23-24; Heck Aff., ¶ 13, Exh. M];

– contacting Mr. Heck with an additional proposal Ms. Thomas sought to have added to the written agreement [Hamilton Dep., at 34, 44];

– receiving a copy of the revised written agreement, incorporating the original settlement terms and the additional term requested by Ms. Thomas and agreed upon by the parties, for Ms. Thomas's signature [Hamilton Dep., 34-36; Heck Aff., ¶ 14, Exh. O]; and

– responding to inquiries from school officials (in February, March, April, and May 2004) about Ms. Thomas's signing the written agreement until such time as Mr. Hamilton informed Mr. Heck, in late May 2004, that he was no longer representing Ms. Thomas [Heck Aff., ¶¶ 15-17].

Ms. Thomas says Mr. Hamilton didn't have the authority to enter into any

negotiations on her behalf and contends the school defendants' claims to the

contrary are untrue and not supported by the evidence. Ms. Thomas argues that Mr. Hamilton's November 25 letter to Mr. Heck supports a finding that Mr. Hamilton knew he had no actual or apparent authority to enter into a settlement without her consent, citing to the following sentence in Mr. Hamilton's letter:

> Therefore, your statement that 'Ms. Thomas will agree not to bring any wage claims, either under *Ind. Code* § 20-6.1-4-11, or any other statute or cause of action, based on the termination of her pay' is something that I cannot agree to, if you intend by such language to include claims under Title VII or Section 1981.

Heck Aff., Exh. E. Ms. Thomas concludes that a "reasonable jury could conclude that, based on Hamilton's response in November 2003 [quoted above], he knew that he did not have actual or apparent authority to enter into a settlement agreement with Heck without Thomas' consent. Hamilton's 'something that I cannot agree to' placed [the School Corporation] on notice of the limits of his apparent authority." Resp., at 6.

The court can't agree. Apparent authority doesn't depend on what the agent (Mr. Hamilton) believed; apparent authority "refers to a third-party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent." Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). That Mr. Hamilton refused, in November 2003, to agree that the School Corporation could tie the rescheduling of Ms. Thomas's termination hearing to her waiver of claims under Title VII or Section 1981 can't be seen as putting the School Corporation on notice "of the limits of his apparent

18

authority" in connection with January 2004 settlement negotiations.[3] After November 2003, Mr. Hamilton continued to represent Ms. Thomas in her dealings with the School Corporation and, in fact, accompanied Ms. Thomas at her January 5 conference with the superintendent. Ms. Thomas hasn't argued that she advised School Corporation officials that Mr. Hamilton wasn't her counsel, wasn't representing her, or wasn't authorized to act on her behalf in the proceedings relating to her employment contracts. That Ms. Thomas continued to place Mr. Hamilton "in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow [him] with apparent authority." Quality Foods, Inc. v. Holloway Assocs. Prof'l Eng'rs and Land Surveyors, Inc., 852 N.E.2d 27, 32 (Ind. Ct. App. 2006); *see also* Zimmerman v. McColley, 826 N.E.2d 71, 79 (Ind. Ct. App. 2005) ("when a party places an agent in the position of sole negotiator on his behalf, it may be reasonable for the third person to believe that the agent possesses authority to act for the principal"); Heritage Dev. of Indiana, Inc. v. Opportunity Options, Inc., 773 N.E.2d 881, 889 (Ind. Ct. App. 2002) ("an agent's authority may arise by implication and may be shown by circumstantial evidence").

---

[3] Ms. Thomas's reliance on that single sentence of Mr. Hamilton's letter to Mr. Heck ignores Mr. Hamilton's next sentence where he enters into an agreement on Ms. Thomas's behalf:

> If your language is intended to refer only to a wage claim affected by Indiana legislation (which may be the intent of the language used since in your final sentence you state), 'It is understood that if the Board votes not to cancel Ms. Thomas' contract, she will be entitled to back pay,' I can agree with your first set of requirements and will do so in Ms. Thomas' behalf.

Ms. Thomas argues that only the School Board can authorize a settlement that includes modification of the terms of employment, but she hasn't argued or pointed to evidence that Mr. Heck wasn't authorized to act on behalf of the School Board or that the School Board – as the party seeking to enforce the settlement agreement – didn't consent to the settlement's terms. Ms. Thomas argues that Indiana Code § 20-28-8-2 requires that "in order for the oral settlement agreement alleged to have been entered between Heck and Hamilton to be valid and binding, there must be mutual consent of the governing body of the school corporation and the assistant principal [and] the contract must be reduced to writing." Resp., at 4. Ms. Thomas, though, hasn't argued or presented any evidence to establish any lack of consent by corporation officials to the settlement agreement they seek to enforce or that the written agreement here at issue doesn't meet the requirements of Indiana Code § 20-28-8-2. Ms. Thomas claims that Exhibits D, E, and F to Mr. Heck's affidavit are "[p]erhaps the best evidence of Hamilton's actual and apparent authority to bind Thomas to a settlement agreement, which he did not have," Resp., at 5, but none of those documents relate to the settlement agreement and her reliance on them is misplaced.

Ms. Thomas also says the school defendants haven't produced any evidence that Mr. Hamilton kept her informed "of each aspect of the alleged settlement agreement." Resp., at 7. Mr. Hamilton was Ms. Thomas's counsel; he didn't represent the School Corporation or any of the school defendants and Ms. Thomas has continued to object to Mr. Hamilton's discussing any aspects of his

20

representation of her, so the adequacy of his advice to Ms. Thomas isn't something the school defendants could be expected to establish. Mr. Hamilton represented Ms. Thomas during the entire process being challenged, and where a person "is represented by chosen counsel throughout negotiations and settlement . . . the settlement agreement is presumptively informed and willing, absent circumstances such as fraud or duress." Baptist v. City of Kankakee, 481 F.3d 485, 490 (7th Cir. 2007). Ms. Thomas says she didn't ask Mr. Hamilton why he told her to report for work at Jackson Intermediate Center "because she was under duress caused by [the School Corporation's] wrongful termination of her regular teacher's contract and assistant principal addendum," Resp., at 11, but that statement doesn't "negate the presumption created by representation by counsel [or] demonstrate the kind of fraud or duress capable of rebutting that presumption." Baptist v. City of Kankakee, 481 F.3d at 491.

Mr. Hamilton didn't possess actual authority to enter into a settlement on Ms. Thomas's behalf, but no reasonable trier of fact could help but find on this record that he possessed apparent authority to do so and that it was reasonable for Mr. Heck and School Corporation officials to believe Mr. Hamilton was an agent of, and had contracting authority to act for, Ms. Thomas. Ms. Thomas, then, is bound by the terms of the revised settlement agreement tendered to Mr. Hamilton on February 2, 2004 (attached to Mr. Heck's affidavit as Exhibit O).

21

## 2. Ratification

The school defendants also argue that even though Ms. Thomas didn't sign the written document, she ratified the settlement agreement by performing according to its terms. According to the school defendants, "[i]nstead of having Ms. Thomas go through with [the] hearing and risk termination, Mr. Hamilton negotiated the settlement agreement and general release permitting Ms. Thomas to retain her teaching contract and be placed at Jackson Intermediate Center as a special education teacher. It is undisputed that Ms. Thomas accepted those benefits and indeed taught at Jackson for the remainder of the 2003-2004 school year. In doing so, Ms. Thomas accepted the attendant pay and benefits accompanying that position." Memo., at 30. The school defendants also point out that Ms. Thomas didn't object to the agreement or refuse to accept the position created for her at Jackson Intermediate Center and, relying on <u>Heritage Dev. of Indiana, Inc. v. Opportunity Options, Inc.</u>, 773 N.E.2d 881, 889 (Ind. Ct. App. 2002), argue that Ms. Thomas's knowing acceptance of the "benefits of an unauthorized employment amounts to a ratification of such contract of employment, and is in the nature of an estoppel to deny the authority to make the contract." The school defendants conclude that the terms of the settlement agreement bind Ms. Thomas and, as a result, the defendants are entitled to judgment on her claims against them.

A principal may be bound by a contract entered into by her agent (even where the agent has neither actual nor apparent authority) "if the principal

22

subsequently ratifies the contract as to one to which [she] is bound." <u>Heritage Dev.</u> <u>of Indiana v. Opportunity Options</u>, 773 N.E.2d at 889. Ms. Thomas says she can't be held to have ratified the settlement agreement because she didn't know Mr. Hamilton had entered into an oral agreement, and knowledge is a necessary element. The knowledge that is a necessary element of ratification is not the principal's knowledge of the terms of the agreement, but the principal's knowing acceptance of the benefits. "[R]atification may be inferred from affirmation, or from passive acquiescence or from receipt of benefits with knowledge. Knowledge, like other facts, need not be proved by any particular kind or class of evidence, and may be inferred from facts and circumstances." <u>Quality Foods, Inc. v. Holloway</u> <u>Assocs. Prof'l Eng'rs and Land Surveyors, Inc.</u>, 852 N.E.2d 27, 34 (Ind. Ct. App. 2006) (<i>quoting</i> <u>Heritage Dev. of Indiana v. Opportunity Option</u>, 773 N.E.2d at 889-890)).

   Even if, as Ms. Thomas claims, she didn't know the oral agreement's terms, she was aware that the School Corporation was considering the termination of her administrator's and teacher's contracts, and when she chose to accept a teaching position and report for work at Jackson Intermediate Center instead of pursuing a termination hearing before the School Board, Ms. Thomas knowingly accepted the position's benefits. "Knowingly accepting benefits of an unauthorized employment amounts to a ratification of such contract of employment, and is in the nature of an estoppel to deny the authority to make such contract." <u>Quality</u>

Foods v. Holloway Assocs., 852 N.E.2d at 34 (*quoting* Heritage Dev. of Indiana v. Opportunity Option, 773 N.E.2d at 889-890).

Ratification "may be express, where the principal overtly adopts the contract, or implied, where the principal both fails timely to repudiate, and accepts the benefits under, the contract." Carr v. Runyan, 89 F.3d 327, 332 (7th Cir. 1996). Ms. Thomas says she couldn't object because didn't know the terms of the oral agreement, but she hasn't argued or presented any evidence to establish that she tried to repudiate or reject the employment offer after her attorney told her to report for work at Jackson Intermediate Center, nor has she set forth evidence demonstrating that she didn't accept the benefits of the teaching position created for her pursuant to the settlement agreement.

The summary judgment record precludes any reasonable finding other than that Ms. Thomas's acceptance of the benefits of the teaching position at Jackson Intermediate Center amounted to a ratification of the parties' settlement agreement. "When a party ratifies a contract, [she] cannot ratify only select provisions but must ratify the whole contract." Indiana Ins. Co. v. Margotte, 718 N.E.2d 1226, 1229 (Ind. Ct. App. 1999) (*citing* Public Savings Ins. Co. v. Greenwald, 118 N.E. 556, 558 (Ind. Ct. App. 1918) ("It is a general rule of agency that a principal, who adopts the act of one professing to act for him, must adopt it in toto, and will not be permitted to claim the benefit arising therefrom, and at the same time repudiate the burden thereof.")). Ms. Thomas is bound by the terms

24

of the revised settlement agreement tendered to Mr. Hamilton on February 2, 2004

(attached to Mr. Heck's affidavit as Exhibit O).


### B. Other Claims

Ms. Thomas' complaint contains claims of retaliation and discrimination

based on race and sex in violation of Title VII, age discrimination under the ADEA,

claims of race discrimination violative of 42 U.S.C. §§ 1981 and 1983, due process

violations under 42 U.S.C. § 1983, and defamation under Indiana law. Neither

party has addressed whether the settlement agreement bars all of Ms. Thomas's

claims, but even if Ms. Thomas hadn't entered into the settlement agreement, the

school defendants would be entitled to summary judgment on her claims.


### 1. Discrimination Based on Race, Sex, and Age

A claim of employment discrimination based on race, sex, or age in violation

of Title VII, the ADEA, or 42 U.S.C. § 1981 requires Ms. Thomas to proceed under

the direct method and rely on either direct or circumstantial evidence of

intentional discrimination, Atanus v. Perry, No. 07-1430, 2008 WL 696908 at *6

(7th Cir. Mar. 17, 2008) ("The focus of the direct method of proof . . . is not

whether the evidence offered is 'direct' or 'circumstantial' but rather whether the

evidence 'points directly' to a discriminatory reason for the employer's action."),

or under the indirect method burden-shifting test of McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973), which requires her to show that she's a member of

a protected class, she was meeting her employer's legitimate expectations, she suffered an adverse employment action, and a similarly situated individual not in the class was treated more favorably. "Summary judgment is appropriate if [Ms. Thomas] fails to establish any of the foregoing elements of the prima facie case." Atanus v. Perry, No. 07-1430, 2008 WL 696908, at *6 (7th Cir. Mar. 17, 2008).

If Ms. Thomas establishes a prima facie case, the burden shifts to the defendants to proffer a legitimate, nondiscriminatory reason for its action, and if the defendants meet this burden, the burden shifts back to Ms. Thomas to demonstrate that the proffered reason is pretextual. Thanongsinh v. Board of Educ., 462 F.3d 762, 772 (7th Cir. 2006); see also Hague v. Thompson Distrib. Co., 436 F.3d 816, 821-822 (7th Cir. 2006) (discrimination claims under Title VII and § 1981 are analyzed in same manner) Grimm v. Alro Steel Corp., 410 F.3d 383, 385 (7th Cir. 2005) (same analysis for discrimination claims under Title VII and the ADEA). Ms. Thomas can avoid summary judgment by "creat[ing] a triable issue of whether the adverse employment action of which [s]he complains had a discriminatory motivation." Rudin v. Lincoln Land Community Coll., 420 F.3d 712, 721 (7th Cir. 2005) (quoting Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir. 1997)).

The school defendants maintain Ms. Thomas can't establish a prima facie case of race, sex, or age discrimination because she has no direct evidence of discrimination and, under the burden-shifting method, she can't establish she was meeting the School Corporation's legitimate performance expectations – "Ms.

26

Thomas's conduct as Assistant Principal was such that she was recommended to be fired" [Mot., at 33] – or that any other administrator outside one of the relevant protected classes was treated more favorably by the same supervisor for similar misconduct. The school defendants also say the School Corporation has a legitimate, non-discriminatory reason for its termination of Ms. Thomas's assistant principal position, as evidenced by Superintendent Raymond's deposition testimony: "The fact that [Ms. Thomas] struck a child and, as reported to me, admitted having done so, [] I did not believe she should continue as an administrator." Raymond Dep., at 76-77.

Ms. Thomas hasn't addressed the school defendants' first argument or presented any evidence to establish that she was meeting the School Corporation's legitimate performance expectations. And while Ms. Thomas claims other administrators, principals, and assistant principals engaged in various wrongdoing and "no principal has been terminated during [Dr.] Green's tenure as Assistant Superintendent-Human Resources who has been charged with a criminal offense," Resp., at 14, those statements are insufficient to establish that any of the people she names were similarly situated, were or were not disciplined by the same supervisor, or engaged in similar misconduct. *See* Nichols v. Southern Illinois Univ.-Edwardsville, 510 F.3d 772, 786 (7th Cir. 2007) ("Even if [plaintiffs] had succeeded in identifying [a similarly-situated] employee, they also would have to show that the employee engaged in other misconduct similar to that in which the Merit Board found [they] had engaged."); Humphries v. CBOCS West,

27

Inc., 474 F.3d 387, 405 (7th Cir. 2007) ("[C]ourts should apply a "common sense" factual inquiry – essentially, are there enough common features between the individuals to allow a meaningful comparison?"); Little v. Illinois Dep't of Revenue, 369 F.3d 1007, 1012 (7th Cir. 2004) ("A similarly-situated employee must have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff."). Ms. Thomas hasn't established a prima facie case of race, gender, or age discrimination, so the court needn't address the school defendants' legitimate non-discriminatory reason for the School Corporation's actions. The school defendants are entitled to summary judgment on Ms. Thomas's claims of employment discrimination under Title VII, the ADEA, and 42 U.S.C. § 1981.

## 2. Retaliation

To prevail on a retaliation claim, Ms. Thomas may proceed under the direct method of proof, which requires her to show through direct or circumstantial evidence that she engaged in statutorily protected activity, she suffered an adverse employment action, and there was a causal connection between the two, Metzger v. Illinois State Police, No. 06-3251, 2008 WL 706602, at *3 (7th Cir. Mar. 18, 2008); or under the indirect method of proof, which requires her to show that she engaged in a statutorily protected activity, she was performing her job according to the School Corporation's legitimate expectations, she suffered an adverse employment action, and she was treated less favorably than similarly situated

employees who didn't engage in statutorily protected activity. <u>Nichols v. Southern Illinois Univ.-Edwardsville</u>, 510 F.3d 772, 785 (7th Cir. 2007). "Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." <u>Hudson v. Chicago Transit Auth.</u>, 375 F.3d 552, 560 (7th Cir. 2004). If Ms. Thomas establishes a prima facie case of retaliation, the burden shifts to the defendants to produce a non-discriminatory reason for the employment action, and if the defendants meet their burden of production, Ms. Thomas must demonstrate that the proffered reason is pretextual. <u>Metzger v. Illinois State Police</u>, 2008 WL 706602, at *3.

The school defendants argue Ms. Thomas can't establish a prima facie case of retaliation because she didn't engage in a statutorily protected activity (they say Ms. Thomas didn't participate in any statutorily protected activity, such as filing an EEOC complaint or articulating to the School Corporation that she was opposing some unlawful practice); she wasn't meeting the School Corporation's legitimate performance expectations (they say the fact that the Superintendent had recommended that Ms. Thomas's administrator's contract be terminated evidences that Ms. Thomas wasn't meeting the School Corporation's legitimate employment expectations); and no similarly-situated employee was treated more favorably (they maintain no similarly-situated administrator engaged in the same misconduct and was treated more favorably). The school defendants also set forth a legitimate non-discriminatory reason for terminating Ms. Thomas's administrative position, as evidenced by Superintendent Raymond's deposition

29

testimony: "The fact that [Ms. Thomas] struck a child and, as reported to me, admitted having done so, [] I did not believe she should continue as an administrator." Raymond Dep., at 76-77.

Ms. Thomas responds that the School Corporation retaliated against her for engaging in activity protected by the First Amendment: she claims she was engaging "in a statutorily protected activity of using a playful approach to get S.A. to follow the directions of [S.A.'s] aide" as allowed by her administrator's contract. Resp., at 13; *see also* Resp., at 19 ("Thomas contends that the SBCSC terminated her employment contract because she engaged in statutorily protected activity under the First Amendment, specifically, engaging and associating with S.A. in a manner permitted under SBCSC policy in an attempt to get her to follow the direction of her paraprofessional aide."). The school defendants object to Ms. Thomas's First Amendment argument because, they say, Ms. Thomas's complaint contains no First Amendment claim or any allegation of retaliation based on her exercise of a First Amendment right of free speech or association. The court agrees that no claim or allegation in Ms. Thomas's complaint relates or alludes to a violation of her First Amendment rights. Because Ms. Thomas may not amend her complaint through her summary judgment response, Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir.

1996)), she has waived any theory of recovery for retaliation under the First Amendment.[4]

Ms. Thomas next claims the School Corporation's "terminating [her] contract on December 15, 2003 was in retaliation for [her] not agreeing to waive her rights under Title VII, Section 1981 and other civil rights statutes." Resp., at 12. Ms. Thomas relies on exhibits attached to Mr. Heck's affidavit to support her claim, but those exhibits support a contrary conclusion. Exhibit E, a letter from Mr. Hamilton to Mr. Heck dated November 25, 2003, shows that Mr. Hamilton objected on Ms. Thomas's behalf to tying the rescheduling of her December 15 School Board hearing to a waiver by Ms. Thomas of potential claims under Title VII and § 1981, an objection to which the School Corporation responded as follows:

> The School Corporation is not asking Ms. Thomas to forgo any rights under Title VII or 42 U.S.C. § 1981. Based on our exchange of letters, therefore, my understanding of our agreement is as follows: The School Corporation agrees to delay the Board's consideration of the immediate cancellation of Ms. Thomas' contracts as assistant principal and teacher until the January 20, 2004 meeting of the Board. The School Corporation will terminate Ms. Thomas' pay as of December 15, 2003. Ms. Thomas agrees not to bring any wage claims affected by Indiana legislation. Ms. Thomas also agrees not to raise a defense based on any alleged untimeliness of the Board's

---

[4] Had Ms. Thomas timely argued that she had engaged in First Amendment activity in her position as assistant principal, she still would not be entitled to the relief she seeks. *See* Garcetti v. Ceballos, 547 U.S. 410, 421-422 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. . . . Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.").

consideration. Our offices will work to coordinate Ms. Thomas'
conference with the Superintendent for the first week of January and
the hearing before the Board for sometime during the second week of
January.

Heck Aff., Exh. F. The record belies Ms. Thomas's claim that the School Board
retaliated against her on December 15, 2003 because she wouldn't agree to waive
her rights under Title VII, Section 1981, and other civil rights statutes.

Ms. Thomas lastly argues that the School Corporation violated her rights
under Section 1981 by terminating her employment contract in retaliation for
refusing "to waive her rights under Title VII and Section 1981 by entering into a
settlement agreement and a general release agreement with SBCSC and not bring
any charges based on the School's actions in seeking the termination of her
contract." Resp., at 20. Ms. Thomas states that she is proceeding under the direct
method of proof and summarily concludes that she "has established a prima facie
cause of retaliation under Section 1981." Resp., at 20-21. Ms. Thomas, though,
hasn't demonstrated that the termination of her assistant principal's contract
could have been in retaliation for actions that hadn't taken place when the
contract was cancelled: her assistant principal's contract was cancelled on
December 15, 2003; Ms. Thomas's refusal to sign the settlement and release
agreements – which she claims constituted her refusal to waive her rights under
Title VII and Section 1981 – occurred some months later. Even if the court were
to assume Ms. Thomas's refusal to sign the settlement and release agreements
constituted a statutorily protected activity, Ms. Thomas hasn't pointed to any

evidence that would establish retaliation based on the cancellation of her assistant principal's contract in December 2003 before she engaged in statutorily protected activity beginning in February 2004. Ms. Thomas hasn't established a prima facie case of retaliation under the direct method.

Nor has Ms. Thomas established a prima facie case of retaliation under the indirect method. She hasn't addressed the school defendants' arguments or presented any evidence to establish that she was meeting the School Corporation's legitimate performance expectations or that any similarly situated employee who didn't engage in statutorily protected activity was treated more favorably. The school defendants are entitled to summary judgment on Ms. Thomas's retaliation claims.

### 3. Failure to Reassign and/or Promote

Ms. Thomas alleges violations of 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcing of employment contracts. Ms. Thomas claims she was deprived of her right to make and enforce contracts and was denied reassignments and promotions because of her race.[5] To prevail on a claim relating to making and enforcing employment contracts under 42 U.S.C. § 1981,

---

[5] Ms. Thomas alleges in Count II of her complaint, entitled "42 U.S.C. Sec. 1981 Claim," that the School Corporation "refused to enter into contracts with plaintiff for positions for which she was the best qualified because of her race, sex and age and denied plaintiff benefits and privileges of said contracts." Compl., ¶ 15. Section 1981 doesn't prohibit age or sex discrimination, see Anooya v. Hilton Hotels Corp., 733 F.2d 48, 50 (7th Cir. 1984); Marshall v. Honeywell Tech. Solutions, Inc., No. 05-2502, 2008 WL 501343, at *6 (D.D.C. Feb. 26, 2008), so to the extent Ms. Thomas claims discrimination based on her age or sex in violation of 42 U.S.C. § 1981, she isn't entitled to the relief she seeks on those claims.

Ms. Thomas must show that she is a member of a racial minority; the defendants had the intent to discriminate on the basis of race; and the discrimination concerned the making or enforcing of a contract. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756 (7th Cir. 2006). A claim of failure to reassign or promote can be established either by "directly show[ing] that racial discrimination motivated the employment decision, or, as is more common, [by relying] on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1993)." Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736-737 (7th Cir. 2006). Under the indirect method, Ms. Thomas must establish that she's a member of a protected group; she was qualified for the position sought; she was rejected for the position; and the employee hired or promoted was a member of a different race and was not better qualified. Nichols v. Southern Illinois Univ.-Edwardsville, 510 F.3d 772, 783 (7th Cir. 2007). If Ms. Thomas establishes a prima facie case of discrimination, then the School Corporation must set forth a legitimate, nondiscriminatory reason for its actions, "which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Sublett v. John Wiley & Sons, 463 F.3d at 737 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)). If the School Corporation sets forth a nondiscriminatory reason for its actions, then Ms. Thomas must establish by a preponderance of the evidence that the proffered reason is pretextual. Nichols v. Southern Illinois Univ.-Edwardsville, 510 F.3d at 784.

The school defendants say Ms. Thomas applied for three positions following her January 2004 reassignment to Jackson Intermediate Center: assistant principal at Washington High School; assistant principal at Greene Intermediate Center; and special education teacher at Jackson Intermediate Center. The school defendants first say Ms. Thomas wasn't hired for either of the assistant principal positions because she wasn't qualified by virtue of her misconduct: Ms. Thomas had been disciplined and stripped of an assistant principal position during the same year she applied for the like positions, so she wasn't qualified for either of the assistant principal positions. According to the school defendants, the people hired for the positions were better qualified because neither of them had engaged in or been disciplined for like misconduct.

The school defendants next say Ms. Thomas wasn't hired for the special education position at Jackson Intermediate Center because she had no in-building transfer rights and was required to seek reassignment through the corporation-wide bidding process. According Dr. Greene, a position was created for Ms. Thomas at Jackson Intermediate Center pursuant to the terms of the parties' settlement agreement, so she didn't have any reassignment rights within the Jackson school building and could secure another position only through a corporation-wide job posting. Greene Dep., at 108-109. Richard Beeching, an NEA representative, also testified that under the terms of the applicable collective bargaining agreement, Ms. Thomas had no in-building bumping rights. Beeching Dep., at 56-59.

35

Ms. Thomas's claim that the school defendants "admit" that the oral settlement agreement prevented her from obtaining the special education position [Resp., at 16] is without merit. The school defendants maintain the applicable collective bargaining agreement – not the settlement agreement – disqualified Ms. Thomas from obtaining the special education position. Ms. Thomas hasn't addressed or pointed to evidence to rebut the collective bargaining agreement's applicability to the special education position at Jackson, nor has she challenged or pointed to any evidence to rebut the school defendants' argument that she didn't receive the either of assistant principal positions because her misconduct disqualified her from those positions. While Ms. Thomas cites to hundreds of deposition pages, *see* Resp., at 16-18, she offers no explanation as to how any of those deposition statements support or relate to her claim of race discrimination under Section 1981. *See* Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1001 (7th Cir. 2004) (the court "will not root through the hundreds of documents and thousands of pages that make up the record here to make [plaintiff's] case for him").

Ms. Thomas summarily concludes, without factual or legal citation, that a jury could infer that the School Corporation denied her positions based on her race and, specifically with respect to the position at Jackson, to "maintain an all white special ed department at Jackson." Resp., at 17. The court can't agree. Ms. Thomas has set forth no evidence demonstrating a racial motivation on the part of the school defendants relating to the positions at issue or suggesting that the

School Corporation's actions were based on her race. *See* O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002) (plaintiff must set forth "evidence that the defendants were more likely than not motivated by a discriminatory reason or that their explanations are not worthy of credence, i.e., they are factually baseless, did not actually motivate the defendants, or were insufficient to motivate the adverse employment action"); Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1007 (7th Cir. 2002) ("Conclusory assertions about a decision maker's racial prejudice are insufficient to establish pretext."); Herron v. DaimlerChrysler Corp., 267 F. Supp. 2d 941, 958 (S.D. Ind. 2003) ("Mr. Herron offers insufficient evidence to raise a reasonable inference that any of the actions about which he complains happened to him *because of his race*."); Lake v. Fairview Nursing Home, Inc., No. 96C8546, 1997 WL 619834, at *4 (N.D. Ill. Sept. 12, 1997) ("Lake's mere suspicion that her supervisors discriminated against her – because she is black and they are white – is insufficient to create a genuine issue for trial."). Ms. Thomas's unsupported conclusions of race discrimination are insufficient to create an issue of fact relating to her right to make and enforce contracts and her claims of failure to reassign and/or promote. *See* United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). The school defendants are entitled to summary judgment on Ms. Thomas's contract claims under 42 U.S.C. § 1981.

*4. Due Process Claims*

Ms. Thomas claims her right to due process was violated when she was suspended from her assistant principal's position, her administrator's contract was cancelled, and she was assigned to a classroom teaching position without being afforded a hearing. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." To demonstrate a procedural due process violation, Ms. Thomas must establish a cognizable property interest; a deprivation of that property interest; and a denial of due process. Hudson v. City of Chicago, 374 F.3d 554, 559 (7th Cir. 2004). "[I]n most cases a public employee with a protectable property interest in his or her job who faces for-cause termination is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." Lalvani v. Cook County, 396 F.3d 911, 915 (7th Cir. 2005) (internal quotation and citation omitted).

The school defendants say procedural protections were in place for Ms. Thomas – she was afforded a choice between having a disciplinary hearing and accepting a change in employment status – and, relying on Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982), they argue that "it is not a deprivation of due process of law to be put to the option of defending onself in a proper dismissal hearing or voluntarily accepting a change in one's job status." Ms. Thomas says in response that she asked for a hearing after the School Corporation initiated

proceedings to cancel her teacher's and administrator's contracts, but she was terminated from her assistant principal's position without a hearing. Ms. Thomas concludes that the School Corporation violated her due process rights by failing to comply with IND. CODE § 20-28-7-3.

Ms. Thomas was provided with an explanation of the School Corporation's evidence against her and notice of the School Corporation's proposed action. *See* Green Aff., Exhs. H, I. A hearing before the School Board on the proposed termination of Ms. Thomas's teacher's and administrator's contracts was scheduled for December 1, 2003; that hearing was continued at the request of Ms. Thomas and her counsel, first, to December 15 and, then, to January 20, 2004. *See* Heck Aff., Exhs. C-F. Ms. Thomas's request for a pre-hearing conference with Superintendent Raymond was granted, and Ms. Thomas attended that conference, accompanied by her counsel, on January 5. *See* Heck Aff., Exh. K; Thomas Dep., at 82. Ms. Thomas then entered into a settlement with the School Corporation; as a result, no termination hearing before the School Board was held.

Ms. Thomas's claim that she was terminated from her assistant principal's position "without a hearing before the School Board on December 15, 2003," Resp., at 15, ignores the fact that the December 15 hearing was continued at her request. The evidence shows that her counsel requested that Ms. Thomas's hearing before the School Board be rescheduled from December 15 to January 20. *See* Heck Aff., Exhs. C-F. Ms. Thomas hasn't alleged that she appeared, personally or through counsel, at any School Board meeting; she hasn't alleged that she

39

attended the School Board meeting on December 15, requested that the Board conduct a termination hearing, and was denied her request; she hasn't alleged that she was in any way prohibited from attending the December 15 or January 20 meeting; nor has she alleged or argued that she asked that her termination hearing be scheduled or rescheduled, only to have her request denied by the School Corporation. Ms. Thomas can't now complain that the School Corporation's granting of her request to continue the December 15 termination hearing amounted to a violation of her Fourteenth Amendment due process rights or the state law procedures set forth in IND. CODE § 20-28-7-3. The School Corporation can't be held to have violated Ms. Thomas's due process rights when it made procedural protections available and Ms. Thomas didn't take advantage of those protections. Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982); Hudson v. City of Chicago, 374 F.3d 554, 563 (7th Cir. 2004) (*citing* Dusanek v. Hannon, 677 F.2d at 543); Farhat v. Jopke, 370 F.3d 580, 596 (6th Cir. 2004) (same); Santana v. City of Tulsa, 359 F.3d 1241, 1244 (10th Cir. 2004) (same); and Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (same); *see also* Martin v. Shawano-Gresham School Dist., 295 F.3d 701, 706-707 (7th Cir. 2002) ("[T]he failure to conform with procedural requirements guaranteed by state law does not by itself constitute a violation of federal due process." (*citing* Pro-Eco, Inc. v. Board of Comm'rs of Jay County, Ind., 57 F.3d 505, 514 (7th Cir. 1995) (a violation of a state procedural statute does not offend the Constitution); Wallace v. Tilley, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create

40

inadequate process under the federal constitution."); <u>Osteen v. Henley</u>, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law . . . is not a denial of due process, even if the state law confers a procedural right."))). Ms. Thomas hasn't established a violation of her due process rights and the school defendants are entitled to summary judgment on her claim.


### 5. Claims under 42 U.S.C. § 1983

Ms. Thomas's allegations that an unconstitutional School Corporation policy violated her civil rights under 42 U.S.C. § 1983 requires her to establish that the School Corporation has an express policy that, when enforced, causes a constitutional deprivation; or the School Corporation has a widespread practice that, while not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or a person with final policymaking authority caused the constitutional injury of which she complains. <u>McCormick v. City of Chicago</u>, 230 F.3d 319, 324 (7th Cir. 2000). The school defendants maintain the South Bend Community School Corporation has no policy, custom, or practice of discrimination and, in fact, has specific policies in place prohibiting discrimination. The school defendants also say Superintendent Raymond didn't violate Ms. Thomas's constitutional rights because although Superintendent Raymond was involved in the decision to suspend Ms. Thomas pending the School Board's consideration of her termination, Superintendent Raymond's decision was based solely on the reports

41

she received indicating that Ms. Thomas struck a disabled, autistic student with a belt and had admitted to the misconduct while disputing the seriousness of her conduct. The school defendants say Ms. Thomas can't establish a violation of her constitutional rights for purposes of § 1983.

Ms. Thomas hasn't set forth any policy, custom, or practice of the School Corporation that violated her constitutional rights, *see* Smith v. Chicago School Reform Bd. of Trustees, 165 F.3d 1142, 1149 (7th Cir. 1999) ("the burden is on the plaintiff to demonstrate the essential policy or custom"), and she hasn't argued or established that Superintendent Raymond had final policymaking authority for the School Corporation. Rasche v. Village of Beecher, 336 F.3d 588, 599 (7th Cir. 2003) ("In order to have final policymaking authority, an official must possess responsibility for making law or setting policy, that is, authority to adopt rules for the conduct of government." (internal quotes and citations omitted)).[6] Ms. Thomas says that "[while] descriptions of necessary elements of individual liability under statute providing for equal rights of all citizens vary, all point to personal involvement of discrimination [by Superintendent Raymond] against plaintiff," Resp., at 22, but that summary conclusion, without more, is insufficient to establish Superintendent Raymond's liability under § 1983. *See* Killinger v. Johnson, 389 F.3d 765, 772 (7th Cir. 2004) ("Plaintiff's municipal liability theory

---

[6] Under Indiana law, a superintendent is charged with acting as chairperson of the school board and "carrying out the acts and duties designated by the board," IND. CODE § 20-23-1-1(e), but "[t]he mere authority to implement pre-existing rules is not the authority to set policy." Killinger v. Johnson, 389 F.3d 765, 771 (7th Cir. 2004).

fails because he has not identified any state or local positive law, or custom having the force of law, that grants either the chief or the mayor authority to adopt rules that are relevant to this case."); <u>Johnson v. Cambridge Indus., Inc.</u>, 325 F.3d 892, 898 (7th Cir. 2003) ("We have repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."). The school defendants are entitled to summary judgment on Ms. Thomas's discrimination claims under 42 U.S.C. § 1983.

### 6. Defamation

Count IV of Ms. Thomas's complaint contains a claim for defamation against Amber Harmon and Martin Lopez, who Ms. Thomas alleges published defamatory statements to third parties, and against Superintendent Raymond, who, according to Ms. Thomas, repeated the false and defamatory statements to third parties.[7] "To prevail on a cause of action for defamation, a plaintiff must prove four elements:

---

[7] A federal court may, and generally should, relinquish supplementary jurisdiction over state law claims when all federal claims are dismissed before trial, *see* 28 U.S.C. § 1367(c)(3); <u>Groce v. Eli Lilly & Co.</u>, 193 F.3d 496, 500 (7th Cir. 1999), but there are situations in which jurisdiction over supplemental claims should be retained even though the federal claims have dropped out, one of which is applicable here: "where it is obvious how the claims should be decided." <u>Williams Elecs. Games, Inc. v. Garrity</u>, 479 F.3d 904, 907 (7th Cir. 2007); *see also* <u>Wright v. Associated Ins. Cos.</u>, 29 F.3d 1244, 1252 (7th Cir. 1994) ("retention of a state-law claim is appropriate when the correct disposition of the claim is 'so clear as a matter of state law that it can be determined without further trial proceedings and without entanglement with any difficult issues of state law'" (*quoting* <u>Brazinski v. Amoco Petroleum Additives Co.</u>, 6 F.3d 1176, 1182 (7th Cir. 1993))). Based on considerations of judicial economy, convenience, fairness, and comity, <u>Sanchez & Daniels v. Koresko</u>, 503 F.3d 610, 615 (7th Cir. 2007), the court retains jurisdiction over Ms. Thomas's defamation claims.

(1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." <u>Hamilton v. Prewett</u>, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007).

The school defendants have advanced several arguments as to why Ms. Thomas can't prevail on her defamation claims, but because their argument that Ms. Thomas didn't comply with the notice requirements of the Indiana Tort Claims Act is dispositive, the court needn't address their other arguments. Ms. Thomas hasn't challenged the school defendants' claim that she didn't comply with the Indiana Tort Claims Act; she merely states that this court has pendent jurisdiction over her defamation claims.

The Indiana Tort Claims Act requires a person bringing a tort claim against a political subdivision of the state[8] to serve notice on the governing body of the political subdivision within 180 days after the loss occurs. IND. CODE § 34-13-3-8(a). Notice of a tort claim involving an employee of a political subdivision is required, as well, "if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment." <u>Schreiber v. Lawrence</u>, No. 1:02-CV-1319, 2003 WL 1562563, at *5 (S.D. Ind. Mar. 4, 2003). "[T]he nature of [Ms. Thomas's] claim – an employer's internal investigation of an employee resulting in termination – is plainly within the scope of the defendants' employment." <u>Id.</u>, at *4. Ms. Thomas hasn't alleged any facts or argued that Amber Harmon, Martin

---

[8] The South Bend Community School Corporation falls within the definition of a political subdivision of the State of Indiana. IND. CODE § 34-6-2-110(9); <i>see also</i> <u>Meury v. Eagle-Union Cmty. Sch. Corp.</u>, 714 N.E.2d 233, 241 (Ind. Ct. App. 1999) ("Claims against school corporations and their employees are subject to the Indiana Tort Claims Act notice of claims provisions.").

Lopez, or Superintendent Raymond acted outside the scope of their employment. Thus, the notice requirements of the Indiana Tort Claims Act, while not applicable to Ms. Thomas's civil rights claims, are applicable to her state law defamation claims. Meury v. Eagle-Union Cmty. Sch. Corp., 714 N.E.2d 233, 242 (Ind. Ct. App. 1999); *see also* Wright v. Elston, 701 N.E.2d 1227, 1233 (Ind. Ct. App. 1998) ("Because a tort action against a governmental employee for actions taken within the scope of his or her employment may impose liability upon the government employer, a plaintiff must provide notice to the employing agency before an action can proceed against the agency's employee.").

Compliance with the Indiana Tort Claims Act "is not a question of fact, but rather a procedural precedent which the plaintiff must prove and which the trial court must determine prior to trial." Madden v. Erie Ins. Group, 634 N.E.2d 791, 793 (Ind. Ct. App. 1994). The school defendants assert that Ms. Thomas didn't provide them with the notice required by IND. CODE § 34-13-3-8(a), and Ms. Thomas hasn't challenged their claim or presented any evidence or argument to the contrary. And even though non-compliance "has been excused in certain cases based on the theories of substantial compliance, waiver, and estoppel," Daugherty v. Dearborn County, 827 N.E.2d 34, 36 (Ind. Ct. App. 2005), Ms. Thomas hasn't argued that her non-compliance should be excused. "Once a defendant raises failure to comply with the [Act's] notice requirements, the burden shifts to the plaintiff to prove compliance." Alexander v. City of South Bend, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003). Ms. Thomas hasn't carried her burden of

45

demonstrating her compliance with the Indiana Tort Claims Act, so her defamation claims are barred and the school defendants are entitled to summary judgment on the claims in her complaint.


V. CONCLUSION

Based on the foregoing, the court

(a) DENIES Ms. Thomas's motions for oral argument [docket # 116 and # 117];

(b) DENIES Ms. Thomas's motion to strike certain evidence [docket # 113];

(c) DENIES Ms. Thomas's motion to strike the affidavit of Jeff Heck [docket # 115];

(d) DENIES Ms. Thomas's motion to strike the affidavit of Karyle Green [docket # 114]; and

(e) GRANTS the motion for summary judgment of defendants South Bend Community School Corporation Board of Trustees, Joan Raymond, Amber Harmon, and Martin Lopez [docket # 108].

The final pretrial conference scheduled for April 28, 2008 and the trial date of May 13, 2008 are hereby VACATED, and the school defendants' motion to continue the trial [docket # 135], Ms. Thomas's motion to file her trial brief instanter [docket # 139], and Ms. Thomas's motion to file proposed voir dire questions instanter [docket # 140] are DENIED as moot.

Because Ms. Thomas's remaining claims against the National Education Association-South Bend have been stayed, the clerk is directed to mark this action closed for statistical purposes. It is further ORDERED that the court shall retain jurisdiction, and this case shall be restored to the trial docket upon motion of a party if circumstances change so that it may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation.

SO ORDERED.

ENTERED:   __April 15, 2008____

__/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court

47